CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUL 29 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| BRYAN JAMES VALENTINE,<br>Plaintiff, | ) ) ) | Civil Action No. 7:10-cv-00429 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| ROANOKE COUNTY POLICE,<br>DEPARTMENT, et al.,<br>Defendants. | ) ) ) ) | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Bryan James Valentine, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 and Virginia law with jurisdiction vested in 28 U.S.C. §§ 1343 and 1367. Plaintiff names as defendants the Roanoke County Police Department; its Chief, Ray Lavinger; its Assistant Chief, Donna Furrow; eleven identified Roanoke County police officers, and six "John Doe" Roanoke County police officers. The defendants filed a motion to dismiss, and plaintiff responding, making the matter ripe for review. After reviewing the record, I grant the defendants' motion in part and deny it in part.

I.

Plaintiff alleges the following relevant facts in his verified complaint. While inside his home during the evening of November 29, 2008, police knocked on the door of plaintiff's house, identified themselves, and told plaintiff they had an arrest warrant for an alleged assault and battery. Plaintiff refused to surrender himself to police. Plaintiff stayed in the house for four hours as the police surrounded the house. The police, including defendants C. L. Rancourt and Defendant Lieutenant John Doe, tried to negotiate plaintiff's surrender after they surrounded the home, but plaintiff kept asking the police to go away and refused to talk to them. Nearly six hours after they knocked on the door, the police broke windows as they launched approximately

thirty CS gas[1] and four concussion grenades into the house, and plaintiff fled into the attic. The police breached the house by bursting through the side door and ultimately determined that plaintiff was in the attic.

The police fired a CS can into the attic and told plaintiff to come down. Plaintiff said he would come down as soon as some of the CS gas dissipated and subsequently began exiting the attic by climbing down the attic stairs. As plaintiff began to descend the stairs, unidentified police officers grabbed him and threw him face first into broken glass on the floor. These officers then began "beating plaintiff with batons, fists, kicking and stomping him." (Compl. ¶ 36.) Plaintiff alleges he never resisted or threatened police while exiting the attic. One of the police officers, who was wearing a mask, placed a firearm against plaintiff's groin and laughed.

Plaintiff argues that the defendants used excessive force while arresting him and caused psychological and physical injuries and property damage. Plaintiff requests declaratory relief and compensatory and punitive damages in excess of $10 million.

II.

I must dismiss any action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the plaintiff's factual

---

[1] "CS gas" is a type of tear gas that causes eye pain and breathing difficulty.

allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions . . . ." Id. Therefore, the plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

However, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950 (May 18, 2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Although I liberally construe pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), I do not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

A.  CONSTITUTIONAL CLAIMS AND DEFENSES

Plaintiff claims that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they extracted him from the attic. However, the defendants' alleged acts occurred while attempting to secure plaintiffs arrest before any conviction.

3

Accordingly, I construe plaintiff's excessive force claim under the Fourth Amendment. See Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) (stating the Eighth Amendment's protections are limited to those persons convicted of crimes); Robles v. Prince George's County, 302 F.3d 262, 268 (4th Cir. 2002) (stating the Fourth Amendment governs excessive force claims made during an arrest). See also Dalia v. United States, 441 U.S. 238, 258 (1979) ("[W]e have held -- and the Government concedes -- that the manner in which a warrant is executed is subject to later judicial review as to its reasonableness.").

Courts analyze Fourth Amendment excessive force claims by determining the "objective reasonableness" of a police officer's use of force. Graham v. Connor, 490 U.S. 386, 388 (1989). The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. Id. at 395. Factors to consider include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. Id. at 396. However, I "must make 'allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving.'" Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001) (quoting Graham, 490 U.S. at 397). Thus, I focus on "the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." Anderson, 247 F.3d at 130 (quoting Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) (citations omitted)).

1. Excessive Force Against Plaintiff's Property

Plaintiff complains that the police used excessive force against his property to accomplish his arrest when they broke windows by launching gas and grenades through the

4

windows and breaking the back door when they breached the house. However, plaintiff admits that he denied the police officers all other attempts to take him into physical custody pursuant to the arrest warrant. The police initially knocked on his door, identified themselves as police, told plaintiff that they had his arrest warrant for assault and battery, and requested his surrender. Instead of complying, plaintiff wanted to negotiate with the police, claiming he would voluntarily surrender himself if the police left. Plaintiff refused to leave the house, even after plaintiff refused to comply for four hours. Plaintiff called 911 about the police, but the dispatcher transferred his call to Lt. John Doe who again asked for plaintiff's surrender. Plaintiff again refused and hung up his phone. Two hours later, the police tried to peacefully effectuate plaintiff's arrest by throwing a phone into the house to encourage him to surrender, but plaintiff refused to talk to the police and threw the phone back outside the house. Thirty minutes later, the police began firing CS gas and concussion grenades into the house to cover their forced entry. The facts alleged in the complaint fail to state a claim of excessive force regarding plaintiff's broken windows and doors because the police's use of CS gas and their entry into the house was reasonable. Their damage is a result of plaintiff's refusal to surrender to the police for an arrest pursuant to warrant, and the complaint fails to objectively establish the police's unreasonableness in entering his house to arrest him. Accordingly, I grant the defendants' motion to dismiss for this claim.

2. Excessive Force Against Plaintiff

Reviewing the present record in a light most favorable to plaintiff, plaintiff states a claim of excessive force against the unknown police officers who allegedly pulled plaintiff from the attic, threw him face first into shards of glass, and then punched, kicked, and clubbed him while

they restrained him on the floor. The record is presently devoid of any indicia of the seriousness of the accusation supporting his arrest warrant or how plaintiff posed an immediate threat to the police as he exited the attic. Although plaintiff previously refused to cooperate to be arrested, plaintiff alleges that immediately prior to the assault he agreed to the arrest and voluntarily exited the attic. Furthermore, the record does not evince plaintiff's ability to threaten the officers' safety as he climbed down from the attic. Similarly, the unknown officer who placed a firearm against plaintiff's crotch after plaintiff was secured does not presently appear objectively reasonable when looking at the complaint in a light most favorable to plaintiff.

3. Qualified Immunity

The defendants argue that they are entitled to qualified immunity to plaintiff's excessive force claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (modified by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first)).

Qualified immunity is an immunity from suit rather than a mere defense to liability. A plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant must demonstrate that the right was not clearly established at the time of the incident to receive qualified immunity. Henry

v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). Accordingly, in order to avoid summary judgment on the basis of qualified immunity, plaintiff must produce sufficient admissible evidence from which a jury could conclude that the defendants employed at least some force against him in a malicious or sadistic manner and that the violated constitutional right was clearly established at the time of the violation.

As previously stated, plaintiff fails to state a claim about the force used against his property, and, thus, the defendants are entitled to qualified immunity on that claim. However, plaintiff presently states a claim of excessive force against his person as the officers seized him. The right to be free from excessive force by the police in securing a person's arrest was clearly established before plaintiff's arrest. See Graham, 490 U.S. at 395-96 (determining that claims of excessive force during arrest are governed by the Fourth Amendment and are analyzed under an "objective reasonableness" standard). Accordingly, defendants are not presently entitled to qualified immunity for plaintiff's claim of excessive force against his person.

B.  STATE LAW CLAIMS AND DEFENSES

   1.  State Law Tort Claims

Plaintiff argues that the defendants committed state-law torts of assault, battery, negligence, and reckless endangerment. Although reckless endangerment is a state criminal violation, Virginia Code § 18.2-371.1(B)(1), no civil remedy exists for reckless endangerment as plaintiff alleges. Plaintiff also fails to state a claim of negligence because he fails to identify the negligent party, the duty of care owed to him, and the deviation from that duty. See Twombly, 550 U.S. at 555 (stating conclusions or buzzwords are insufficient to state a claim).

In Virginia, "a common law assault, whether a crime or tort, occurs when an assailant

7

engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm or engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim." Carter v. Commonwealth, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005). The intent to harm may be ascertained by the circumstances of the offense, including the actor's words and conduct. Commonwealth v. Vaughn, 263 Va. 31, 36, 557 S.E.2d 220, 223 (2002). Plaintiff's assertion that the police officers who first arrived and then surrounded his house made him fear for his life is not a reasonable belief. The officers knocked, announced their presence, told plaintiff that they had a warrant for his arrest, and requested his surrender. The mere fact that police carry firearms for their protection, without anything more, does not create a reasonable fear of harm. Although the use of C4 and concussion grenades are designed to temporarily impact plaintiff's sight, breathing, and hearing, the circumstances surrounding their use do not evince an intent to harm plaintiff. After the police provided plaintiff six hours to surrender, the use of the C4 and concussion grenades were used to facilitate the police officers' entry into the house, not to threaten or cause plaintiff to reasonably fear harm. However, the officer's use of the firearm near plaintiff's groin following his alleged beating presently qualifies as an overt act to place him in reasonable apprehension of harm.

Under Virginia law, a battery is a non-consensual touching of another, however slight. Pugsley v. Privette, 220 Va. 892, 899, 263 S.E.2d 69, 74 (1980). Furthermore, "an arrest utilizing excessive force is a battery because that touching is not justified or excused and therefore is unlawful." Gnadt v. Commonwealth, 27 Va. App. 148, 151, 497 S.E.2d 887, 888 (Va. App. Ct. 1998). Although plaintiff consented to the officers arresting him before climbing

down the attic stairs, nothing indicates his consent to the beating that he alleges to have received. Accordingly, plaintiff's claims of reckless endangerment and negligence are dismissed, but his claims battery and the one assault remain.

2. Sovereign Immunity

The defendants argue that they are entitled to sovereign immunity to plaintiff's state law claims. See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (stating a district court may reach the merits of an affirmative defense when ruling on a motion to dismiss if all facts necessary to the affirmative defense clearly appear on the face of the complaint). Governmental employees are not entitled to sovereign immunity for intentional torts, Elder v. Holland, 208 Va. 15, 19, 155 S.E.2d 369, 372-73 (1967), regardless whether they act within or without the scope of their authority, Fox v. Deese, 234 Va. 412, 423-24, 362 S.E.2d 699, 706 (1987). Since assault and battery are intentional torts, sovereign immunity is not available in response to these state law claims. See Glasco v. Ballard, 249 Va. 61, 64, 452 S.E.2d 854, 856 (1995) (citation omitted) (recognizing assault and battery as intentional torts).

C. DISCOVERY IS NECESSARY TO IDENTIFY THE APPLICABLE DEFENDANTS.

Although designation of a "John Doe" or "unknown" defendant is not favored by federal courts, it is permissible when a defendant's identity is not known at the time the complaint is filed and plaintiff could identify the defendant through discovery. Schiff v. Kennedy, 691 F.2d 196, 198 (4th Cir. 1982). "[P]laintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Accordingly, defendants must provide plaintiff the opportunity to

view appropriate records to allow him to identify the John Doe and other named defendants who were immediately present when officers physically removed him from the attic.

III.

For the foregoing reasons, I grant the defendants' motion to dismiss for claims of excessive force against property, negligence, and reckless endangerment and deny it for plaintiff's remaining claims of excessive force against his person, battery, and the instance of assault. The defendants must allow plaintiff to view discoverable records, pursuant to Fed. R. Civ. P. 26, that allow him to identify the John Doe and other named defendants who were immediately present when officers physically removed him from the attic.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to plaintiff and counsel of record for the defendants.

**ENTER**: This 20th day of July, 2011.

*/s/ Jackson L. Kiser*
Senior United States District Judge